IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| United States of America | : | |
|---|---|---|
| | : | Case No. CR-1-06-43 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Vernon Powell | : | ORDER DENYING |
| | : | DEFENDANT'S MOTION TO |
| Defendant | : | SUPPRESS |
| | : | |

This matter comes before the Court on Defendant Vernon Powell's Motion to Suppress (doc. #27). This Court held a hearing on the Motion on June 22, 2006. At the hearing, this Court advised Defendant that it was going to deny his Motion in an opinion to follow. For the foregoing reasons, Defendant's Motion to Suppress is **DENIED** (doc. #27).

**I.   FACTUAL BACKGROUND**[1]

As of March 7, 2006, there were warrants outstanding for Powell's arrest. On that day, members of the Regional Narcotics Unit ("RENU") were conducting surveillance of Powell, who was the target of an on-going drug investigation initiated by Agent Kyle Ingram. At about three, Powell was at a residence on Harrison in Cincinnati, Ohio, with his friend, Mycola Pearson. Powell and Pearson drove downtown and parked in the alley named Shillito's Place. Powell got out of the car and went to Tri-State Jewelry, located across from Shillito Place on Race Street.

---

[1] The following factual recitation is a combination of Powell's and the Government's accounts in their respective Motion to Suppress and Response to that Motion, and the witnesses' testimony at the hearing.

Lieutenant Brad Winall saw Powell get out of the passenger side of a car (later identified as Mycola Pearson's car) and enter Tri State Jewelry. Lieutenant Winall decided to arrest Powell on the outstanding warrants, so he called for backup. Cincinnati Police Officer James Bolt, among others, responded to the backup call. Officer Bolt and another officer approached the front door of Tri State Jewelry as Powell was exiting the store. Officer Bolt asked Powell to identify himself, and after Powell did so, Officer Bolt arrested him pursuant to the outstanding warrants. Officer Bolt then conducted a search of Powell's person. Officer Bolt found a loaded Bersa .40 caliber semi-automatic firearm in Powell's waistband, three cell phones, $3,460.00 in Powell's pocket, and 100.01 grams of powder cocaine in Powell's coat pocket.

After Powell was in custody, Lieutenant Winall and other officers went to search the car in which Powell had been riding, which was still parked in the Shillito's Place alley. Lieutenant Winall removed the driver, Mycola Pearson, Powell's girlfriend at the time, and her toddler, from the car. He then searched the car and found 3.9 kilograms of powder cocaine in two plastic bags on the passenger side of the car.

The officers then took Powell to the Cincinnati Police Department Criminal Investigation Section ("CIS"). Powell testified at the hearing that the officers told him that Pearson was also being questioned at CIS. He also thought that his sister, Ms. McCloud, had been arrested. At CIS, Agent Ingram and Sergeant Gregory Morgan interviewed Powell. Agent Ingram entered the interview room first.[2] Sergeant Morgan then entered the interview room, and Agent Ingram read

---

[2] Ingram testified that as he entered the interview room, and before he had a chance to read Powell his Miranda rights, Powell stated, "you [the police] just crippled my world." Powell does not appear to be challenging this statement, however, but only "his confession after Miranda was administered." (Doc. #27 at 3.)

Powell his Miranda warnings. Powell then signed a form entitled "Notification of Rights" ("Notice") that described his Miranda rights. (See doc. #29, ex.2 (also Govt. Ex.6 at the hearing.))

Agent Ingram and Sergeant Morgan then interviewed Powell. Agent Ingram testified that Powell stated that all the cocaine discovered in the car was his, gave the name of his cocaine supplier, and told the officers that they could find more evidence at two other residences on Vine Street and Lowell Avenue. Law enforcement officers later used the information to obtain search warrants on several properties, including Powell's residence. During these searches, the officers found additional guns, drugs, and drug paraphernalia.

## II. ANALYSIS

Defendant Powell has moved to suppress both his statement to the police and the evidence discovered in the search of the car in which he was riding just prior to his arrest.

### A. Search of Pearson's Car, in Which Powell Had Been a Passenger

Powell contends that the evidence collected from the search of Pearson's car is inadmissible because the officers could not lawfully search the car. Powell argues that the police could not lawfully search the car because he never gave them permission to do so and they had no probable cause to search the car. Powell argues that the police did not have probable cause to search the car because 1) he was taken into custody more than 300 feet from the car; and 2) "the vehicle was legally parked and there was no indicia of any type of criminal activity in or about said vehicle." (Doc. #27 at 4-5.) The Government counters that Powell does not have standing to challenge the search of Pearson's car. (Doc. #29 at 3.) Following Powell's presentation of evidence at the

3

hearing, the Court held that Powell did not have standing to challenge the search. The reasons for that ruling follow.

The question of standing is a preliminary inquiry, and Powell has the burden of establishing that he has standing to challenge the search. See U.S. v. Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir. 1988) (citing Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)). "The right to be free from unreasonable searches and seizures is a personal right which may not be vicariously asserted. Accordingly, a defendant may only seek to suppress evidence under the exclusionary rule where that defendant's legitimate privacy interest under the Fourth Amendment has been violated," or, as the parties have described it, the defendant has standing.[3] U.S. v. Dycus, Nos. 04-5975, 04-5976, 2005 WL 2757618, at **2 (6th Cir. Oct. 25, 2005) (citations omitted).

Although he did not so testify at the hearing, Powell previously made a statement (which he now seeks to suppress) that the cocaine found in Pearson's car was his. While "property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated [by seizure of their property]. . . property rights are neither the beginning nor the end of this Court's inquiry." U.S. v. Salvucci, 448 U.S. 83, 91 (1980). Rather, the pertinent question in determining whether a search violated the rights of a defendant is whether that defendant had "a legitimate expectation of privacy in the invaded space." Id. at 92. Generally, passengers do not have standing to challenge – or, more accurately, do not have a protectable privacy interest that

---

[3]See Rakas, 439 U.S. at 139-40; see also U.S. v. McWhorter, Nos. 92-6217, 92-6219 and 92-6406, 1993 WL 337549, at **3 (6th Cir. Aug. 31, 1993) ("[s]tanding in the Fourth Amendment context is not jurisdictional; it is a shorthand way of referring to whether the defendant had a reasonable expectation of privacy").

4

could have been violated during – the search of a car in which they had been riding. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978); United States v. Kirk, 57 F.3d 1071, 1071 (6th Cir. 1995).

At the hearing, Powell testified that the car in which he had been riding and which the police searched belonged to Mycola Pearson. Agent Ingram testified that Powell was not in the car at the time of the search. As Powell neither owned nor possessed the car at the time of the search, he had no legitimate expectation of privacy in the car. Powell therefore failed to meet his burden of proving his standing to challenge the search of Pearson's car. His Motion to Suppress (doc. #27) is thus **DENIED** to the extent that he seeks to suppress the evidence seized during the police's search of Pearson's car.

### B. Powell's Statement

Powell conceded that he was read his Miranda rights before he made the incriminating statement. He contends, however, that his statement is not admissible because it was involuntary. A defendant's statement is not admissible under Miranda unless the defendant has been informed of and waived his constitutional rights to counsel and against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Even where a defendant was given a Miranda warning, however, his statement is not admissible if it was involuntary. "[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." Lego v. Twomey, 404 U.S. 477, 489 (1972).

The Sixth Circuit "has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion

in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." U.S. v. Miggins, 302 F.3d 384, 397 (6th Cir. 2002) (citations omitted). "In determining whether a confession has been elicited by means that are unconstitutional, this court looks at the totality of the circumstances concerning 'whether a defendant's will was overborne in a particular case.' Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." U.S. v. Haynes, 301 F.3d 669, 684 (6th Cir 2002).

Powell testified at the hearing that when he was being interviewed, he thought both Pearson and McCloud had been arrested. He also testified that both Agent Ingram and Sergeant Morgan told him that McCloud would be charged with conspiracy, and Sergeant Morgan threatened to have Pearson's child taken away, if he did not admit that the cocaine found in Pearson's car was his. Powell also testified that he would not have told the police that the cocaine was his or about his larger drug operation if not for such threats. Powell contends that his will was overborne "when it [was] made clear to him that if he [took] the responsibility for the cocaine Ms. Pearson will [sic] be let go." (Doc. # 27 at 3.)

The decision in Haynes is instructive. In Haynes, the defendant challenged a statement he made to the police following his arrest and after he had been read his Miranda rights. Like Powell, the defendant argued that the police "coerced him into waiving his *Miranda* rights and to giving the statement by threatening to take legal action against," in that case, his girlfriend and daughter. The

6

Sixth Circuit held that this alleged threat, even if it were assumed to be true, was of insufficient gravity to overbear the will of a person of Hayne's age and experience with the criminal justice system who had already been read his Miranda rights.  Haynes, 301 F.3d at 684.

Under Haynes, even if this Court assumes that Powell's allegations of the police's threats are true, such alleged threats are legally insufficient to overbear the will of someone like Powell. Powell testified that he had been arrested four or five times and that he had prior experience with the criminal justice system.  Further, Powell testified that he is twenty-five years old, can read and write, and went to school up to the twelfth grade.  Also, although Powell testified that he was upset during his interview, he denied that he was incapacitated or high on any drugs.  Most significantly, Powell testified that he signed the Notice and understood his waiver of his Miranda rights.  And finally, there is no evidence in the record of any police intimidation, coercion, abuse or deception that may have influenced Powell to waive his rights.

Based on the totality of the circumstances, the Court concludes that Powell's waiver of his Miranda rights was knowing and intentional and that his incriminating statement was voluntary. Powell's Motion to Suppress his statement therefore must be **DENIED**.

### III.  CONCLUSION

For the foregoing reasons, Defendant Powell's Motion to Suppress (doc. #27) is **DENIED**.

IT IS SO ORDERED.

                                                                          s/Susan J. Dlott
                                                                          Susan J. Dlott
                                                                          United States District Judge